SEYFARTH SHAW LLP
Catherine M. Dacre (SBN 141988)
Cody D. Knight (SBN 257627)
E-mail: cdacre@seyfarth.com
E-mail: cknight@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California  94105
Telephone:  (415) 397-2823
Facsimile:  (415) 397-8549

Attorneys for Defendants
LEXIS/NEXIS, INC., REED ELSEVIER, INC.
AND MATTHEW BENDER & COMPANY INC.

# UNITED STATES DISTRICT COURT

## IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND

| | |
|---|---|
| SEMMANTHA CHIE and JENNIFER DESSIN, on behalf of themselves and aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>REED ELSEVIER, INC., LEXIS/NEXIS, INC. and MATTHEW BENDER & COMPANY, INC.<br><br>Defendants. | Case No. CIV 11-1784 LB<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:          July 28, 2011<br>Time:          11:00 a.m.<br>Judge:         Hon. Laurel Beeler<br>Dept./Place:   Floor 3, Room 4<br><br>Complaint Filed:  April 12, 2011 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 28, 2011 at 11:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Magistrate Laurel Beeler in Courtroom 4, 3rd Floor of the United States District Court of the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612-5212, Defendants LEXIS/NEXIS, INC., REED ELSEVIER INC., AND MATTHEW BENDER & COMPANY, INC. (collectively, "Defendants"), will, and

1    hereby do, move this Court to dismiss Plaintiffs' Semmantha Chie and Jennifer Dessin's Original

2    Unverified Complaint.

3            This Motion is based on Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Article

4    III, Section 2, Clause 1 of the United States Constitution (the "Case or Controversy

5    Requirement"), the pleadings and papers on file with this Court, this Notice of Motion, the

6    Memorandum of Points and Authorities filed in support of this motion, the Declaration of

7    Ashleigh Owens filed concurrently with this motion, and any such other pleadings or oral

8    argument that may be presented to the Court at or before the hearing.

9    DATED: June 14, 2011              SEYFARTH SHAW LLP

10                                     By____/s/  Cody D. Knight_____
                                            Catherine M. Dacre
11                                          Cody D. Knight
                                      Attorneys for Defendants
12                                    LEXISNEXIS, INC., REED ELSEVIER, INC.
                                      AND MATTHEW BENDER & COMPANY INC.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION.................................................................................................1

II.     THE ALLEGATIONS IN THE COMPLAINT .........................................................2

        A.      Allegations as to Misclassification ...........................................................2

        B.      Allegations as to the Labor Code Private Attorney General Act.............................2

        C.      Allegations Relevant to the Intentional Misrepresentation
                Cause of Action...........................................................................3

        D.      Allegations Relevant to the ERISA Causes of Action................................3

III.    ADDITIONAL FACTUAL BACKGROUND ..........................................................4

        A.      The Role of Additional Factual Evidence ....................................................5

        B.      Lexis Made Unconditional Payment of Full Relief Prior to
                Plaintiffs' Filing of the Case .........................................................5

        C.      The Amounts Paid by Lexis Exceed the Potential Overtime
                Liability to Each Plaintiff Under California Law. ...................................6

IV.     PLAINTIFFS' WAGE & HOUR CLAIMS ARE
        CONSTITUTIONALLY MOOT.....................................................................7

        A.      The Doctrine of Constitutional Mootness...............................................7

        B.      Lexis Tendered Full Back Overtime Payments Prior to
                Plaintiffs' Filing of this Lawsuit. ...................................................7

V.      PLAINTIFFS' REPRESENTATIVE ACTION AND FRAUD CAUSES
        OF ACTION FAIL TO SATISFY GENERAL PLEADING STANDARDS
        AND THEREFORE STATE NO CLAIM. .........................................................9

        A.      Plaintiffs' Representative Action Allegations Fail to Satisfy
                Minimal Pleading Standards. ........................................................9

        B.      Plaintiffs Fail to State a Claim for Fraud (Intentional
                Misrepresentation). ...............................................................11

                1.      Alleged misrepresentations of law, as opposed to fact,
                        cannot give rise to actionable fraud. ....................................12

                2.      Plaintiffs have failed to allege facts sufficient to prove
                        that any statement was made with knowing falsity. ...................13

                3.      Plaintiffs have failed to allege facts to support the
                        existence of any duty that Lexis allegedly violated....................13

4.  Plaintiffs have not pleaded facts to support a finding that any reliance on their part was reasonable. ..........................................15

5.  Plaintiffs have not alleged that they suffered any harm or detriment due to their alleged reliance. ..................................................16

**VI.  PLAINTIFFS FAIL TO STATE CLAIMS FOR RELIEF UNDER ERISA.** ........................................................................................17

A.  Plaintiffs have not alleged that Defendants engaged in discretionary fiduciary acts with regard to the Plan. ...............................18

B.  Plaintiffs have not exhausted administrative remedies. ...........................................19

C.  Plaintiffs plead no injury from the ERISA allegations. ...........................................20

**VII.  CONCLUSION** ...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

**FEDERAL**

*Amato v. Bernard,*
   618 F.2d 559 (9th Cir. 1980).................................................................19

*Ambalu v. Rosenblatt,*
   194 F.R.D. 451 (E.D.N.Y. 2000) .......................................................7, 8

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997).................................................................................5

*Atlantic Richfield Co. v. Farm Credit Bank of Wichita,*
   226 F.3d 1138 (10th Cir. 2000) ..........................................................16

*Ballaris v. Wacker Siltronic Corp.,*
   2002 U.S. Dist. LEXIS 2746 (D. Or. Feb. 7, 2002)............................19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)...............................................................................9

*Bowman v. City of Indianapolis,*
   133 F.3d 513 (7th Cir. 1998) ........................................................15, 16

*Briggs v. Arthur T. Mott Real Estate, LLC,*
   2006 U.S. Dist. LEXIS 82891 (E.D.N.Y. Nov. 14, 2006)......................8

*Building & Constr. Dep't v. Rockwell Int'l Corp.,*
   7 F.3d 1487 (10th Cir. 1993) .................................................................8

*Cntr. for Biological Diversity v. Lohn,*
   511 F.3d 960 (9th Cir. 2007) .................................................................7

*Conley v. Gibson,*
   355 U.S. 41 (1957).................................................................................9

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir.1997) ................................................................13

*Diaz v. United Agric. Employee Welfare Plan and Trust,*
   50 F.3d 1478 (9th Cir. 1995).................................................................19

*Gator.com Corp. v. L.L. Bean, Inc.,*
   398 F.3d 1125 (9th Cir. 2005) ...............................................................7

*Greisz v. Household Bank (Il.), N.A.,*
   176 F.3d 1012 (7th Cir. 1999) ...............................................................8

*Guttierez v. Aaron's, Inc.*,
   2010 WL 4968142 (E.D.Cal. 2010)..........................................................................11

*Hall v. Hill Refrigeration, Inc.*,
   36 F. Supp. 2d 1185 (C.D. Cal. 1999) .................................................................... 18

*Harding v. Time Warner, Inc.*,
   2009 U.S. Dist. Lexis 72851 ..........................................................................10, 11

*Hickman v. Tosco Corp.*,
   840 F.2d 564 (8th Cir. 1988) ................................................................................19

*Hsu v. OZ Optics Ltd.*,
   211 F.R.D. 615 (N.D. Cal. 2002) ...........................................................................13

*Jian Zhong v. August August Corp.*,
   498 F. Supp. 2d 625 (S.D.N.Y. 2007)......................................................................10

*KEMA, Inc. v. Koperwhats*,
   658 F. Supp. 2d 1022 (N.D. Cal. 2009) .................................................................16

*MacKenzie v. Kindred Hospitals East, L.L.C.*,
   276 F. Supp. 2d 1211 (M.D. Fl. 2003).......................................................................8

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ................................................................................12

*Native Vill. of Noatak v. Blatchford*,
   38 F.3d 1505 (9th Cir. 1994) ..................................................................................7

*Oestreicher v. Alienware Corp.*,
   544 F.Supp.2d 964 (N.D. Cal. 2008) ....................................................................13

*Pegram v. Herdrich*,
   530 U.S. 211 (2000).............................................................................................. 18

*Phillips v. Amoco Oil Co.*,
   799 F.2d 1464 (11th Cir. 1986), *cert. denied*, 481 U.S. 1016 (1987) ..................... 18

*Rosenburg v. IBM*,
   2006 U.S. Dist. LEXIS 41775 (N.D. Cal. June 12, 2006) .......................................19

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 .......................................................................................................5

*Savage v. Glendale Union High Sch.*,
   343 F.3d 1036 (9th Cir.2003) .................................................................................5

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
   594 F.2d 730 (9th Cir. 1979) ..................................................................................5

iv

*United States v. Panthaky*,
    232 Fed. Appx. 645 (9th Cir. Cal. 2007) .................................................................12

*Veliz v. Cintas Corp.*,
    2003 WL 23857822 (N.D. Cal. 2003) .....................................................................19

*Werman v. Malone*,
    750 F. Supp. 21 (D. Me. 1990) ...............................................................................17

*White v. Lee,*
    227 F.3d 1214 (9th Cir.2000) ....................................................................................5

**STATE**

*Arias v. Superior Court*,
    45 Cal.4th 969 (2009) .............................................................................................10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)...................................................................................9, 10, 13

*Bell Atl. Corp. v. Twombly,*
    127 S.Ct. 1955 (2007)..........................................................................................9, 10

*Eddy v. Sharp*
    (1988) 199 Cal.App.3d 858 .....................................................................................14

*Engalla v. Permanente Medical Group, Inc.*
    (1997) 15 Cal.4th 951 ..............................................................................................12

*Goodman v. Kennedy*,
    18 Cal.3d 335 (1976) ...............................................................................................13

*Haviland v. S. Cal. Edison Co.*,
    172 Cal. 601 (1916) .................................................................................................12

*Hills Trans. Co. v. Southwest Forest Indus., Inc.*,
    (1968) 266 Cal.App.2d 702 .....................................................................................13

*LiMandri v. Judkins*
    (1997) 52 Cal.App.4th 326 ......................................................................................14

*Molko v. Holy Spirit Assn.*
    (1988) 46 Cal.3d 1092 .............................................................................................12

*Odorizzi v. Bloomfield Sch. Dist.*,
    246 Cal. App. 2d 123 (1966) ...................................................................................15

*Rollins v. Systems Integrations, Inc.*,
    C.A. No. 4:05-CV-408-Y, Slip Op., 2006 WL 3486781 (N.D. Tex. Dec. 4, 2006)...................8

v

*Service by Medallion, Inc. v. Clorox Co.*
    (1996) 44 Cal.App.4th 1807 ...................................................................12

*Slocomb v. City of Los Angeles*,
    197 Cal. App. 2d 794 (1961) ....................................................12, 13, 15

**STATUTES**

29 U.S.C. § 1104...............................................................................................18

California Private Attorney General Act of 2004 ("PAGA")........................2, 9, 10, 11

Employee Retirement Income Security Act of 1974 ..................................17

Employment Retirement Income Security Act of 1974 ("ERISA")...................2, 3, 17, 18, 19, 20

Labor Code Private Attorney General Act of 2004 ......................................2

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8 ..............................................................9

Federal Rule of Civil Procedure 12(b)(6) ................................................5, 9

Federal Rule of Civil Procedure 68 ............................................................8

Restatement (Second) of Torts § 545 (1977)..............................................12

United States Constitution, Article III, Section 2, Clause 1 ......................1

**MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

## I.   INTRODUCTION

This lawsuit arises from LexisNexis's[1] ("Lexis's") voluntary reclassification of the two named Plaintiffs from exempt, overtime ineligible to overtime eligible status.  In connection with that reclassification, Lexis made additional wage payments to Plaintiffs.  The amounts that Lexis paid to Plaintiffs were sufficient to offset in full any back wages that they could have recovered in a lawsuit alleging misclassification under the California Labor Code or the federal Fair Labor Standards Act.  In making the payments, Lexis neither admitted nor intended to admit that it misclassified Plaintiffs as overtime ineligible employees.  It made the payments for business reasons, and in particular to avoid the risk that Plaintiffs might choose to sue Lexis to recover the very amounts that it paid to them as back wages.  Lexis accordingly paid Plaintiffs the back wages without condition; the payments were not predicated on any release.

To Lexis's knowledge, the payment checks that it tendered are still in the possession of Plaintiffs' counsel, to whom Lexis sent them.  Plaintiffs have nevertheless opportunistically sued Lexis, seeking a windfall recovery of far more than the maximum back wage amount to which they would legally be entitled, even if Lexis were found to have misclassified them.

Because they already have been unconditionally tendered the full amount of wages in controversy, this court lacks jurisdiction to adjudicate Plaintiffs' claims for minimum wage and overtime. (*See* United States Constitution, Article III, Section 2, Clause 1 (the "Case and Controversy Requirement")).  Those claims therefore must be dismissed as constitutionally moot.  For the same reason, Plaintiffs' claim for breach of implied contract is also moot because Plaintiffs have been unconditionally tendered in full an amount that greatly exceeded the amount of wages in controversy.

Each of Plaintiffs' remaining causes of action suffers from one or more other deficiencies.  Plaintiffs claim fraud, but fail to plead reasonable reliance or detriment, and

---

[1] Plaintiffs are current employees of Lexis.  Lexis is a division of Reed Elsevier, Inc.  Matthew Bender & Company is a separate corporate entity and did not employ Plaintiffs.  Nonetheless all defendants bring this motion and for ease of reference are referred to herein as "Lexis."

generally fail to meet the heightened pleading standards for fraud. They purport to seek representative action status under the Labor Code Private Attorney General Act ("PAGA"), but do not allege *any* of the foundational facts to allow such representation. Finally, Plaintiffs' cause of action under the Employment Retirement Income Security Act of 1974 ("ERISA"), fails to state a claim under established appellate law. These deficiencies are evident from the face of the complaint and require dismissal.

## II.   THE ALLEGATIONS IN THE COMPLAINT

### A.   Allegations as to Misclassification

Plaintiffs allege they have been employed by Lexis since January 2005 (for Chie) and August 2006 (for Dessin), and have worked for the company as Publishing Coordinators. (Complaint ¶ 9.) In the Publishing Coordinator position, Lexis initially classified them as exempt, salaried employees. (*Id*.) Plaintiffs contend that Lexis converted them to hourly, non-exempt employees on or around May 10, 2010. (Complaint ¶ 12.) They allege that, prior to this reclassification, Lexis misclassified them as exempt employees and therefore failed to pay them minimum wage and overtime compensation in compliance with federal and state law. (Complaint ¶¶ 14-15.) The Complaint discusses certain back wage payments made to Plaintiffs and other employees by Lexis. (Complaint ¶ 113.)

### B.   Allegations as to the Labor Code Private Attorney General Act

The Labor Code Private Attorney General Act of 2004 ("PAGA" or the "Act") allows an aggrieved employee to pursue civil penalties which, prior to the Act's enactment, were only available in enforcement proceedings by the California Labor Commissioner. A worker may seek penalties on his or her own behalf and/or on behalf of other workers who are sufficiently similarly situated, in what is referred to as a "representative action." Plaintiffs allege that there are approximately 30 "similarly situated" workers in California and up to 200 "similarly situated" workers nationally who are employed by Lexis. (Complaint ¶ 13.) Plaintiffs assert no specific factual allegations as to how the other workers are "similarly situated," and allege no facts in support of this conclusory allegation. Nor do they allege facts suggesting that they can serve as adequate representatives of any other workers.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.    Allegations Relevant to the Intentional Misrepresentation Cause of Action

The Complaint alleges that, in the course of issuing back wage payments, Lexis made communications to the Plaintiffs that were inaccurate and/or misleading. (Complaint ¶¶ 112-117.)  For instance, Plaintiffs claim that they were advised by a Lexis human resources representative in May of 2010 that back wages were being paid for a period of two years because that is the statute of limitations under California law. (Complaint ¶ 117.)  They do not plead any facts to support a claim that the Lexis representative knew this alleged statement to be false at the time it was made.  Each misrepresentation allegedly made by Lexis pertained to an issue of law (*e.g.*, what the law requires), not of fact. (*See, e.g.,* Complaint ¶¶ 116-117.)

Plaintiffs contend that they relied on these representations allegedly made on or around May 10, 2010 and in the period shortly thereafter, and refrained, as a consequence, from filing an action to recover unpaid wages sooner than they filed the instant litigation on April 12, 2011; they claim, therefore, that part of the statute of limitations had tolled by the time of their lawsuit. (Complaint ¶¶ 121-122.)  They contend that their reliance was therefore to their detriment. (Complaint ¶ 122.)  They do not contend any other manner of reliance. (Complaint ¶¶ 112-122 [by omission].)  The Complaint alleges that the reliance was reasonable due to Lexis's status as a leader in the automated legal research industry. (Complaint ¶ 120.)

Plaintiffs contend that they "are informed and believe" that they were owed a fiduciary duty by Ashleigh Owens, a Lexis human resources representative, and that they were in a confidential relationship with Ms. Owens. (Complaint ¶ 112.)  They do not allege any specific facts to support the existence of any such confidential relationship or fiduciary duty. (Complaint ¶ 112 [by omission].)

### D.    Allegations Relevant to the ERISA Causes of Action

Lexis has established a 401(k) retirement plan (the "Plan") to provide benefits for qualifying employees who choose to participate. (Complaint ¶¶ 64-72 [implied but not specifically alleged].)  Plaintiffs contend that the amount of benefits they receive under the Plan depends, in part, on their compensation including overtime compensation. (Complaint ¶ 70.)  Plaintiffs claim that their hours of work and wages earned were not tracked accurately by Lexis,

3

1   and that the records maintained were insufficient to determine the benefit accrual rights of

2   themselves and other employees. (Complaint ¶ 71.)

3           Plaintiffs further contend that Lexis acted in a discretionary, fiduciary capacity with

4   regard to the Plan. (Complaint ¶¶75-77.)   Plaintiffs claim that Lexis breached a fiduciary duty

5   owed in regard to management of the Plan by failing to credit fully the straight time and

6   overtime hours they worked as compensation under the Plan. (Complaint ¶ 78.)  They contend

7   that they are entitled to equitable relief in the form of additional contributions to the Plan from

8   Lexis. (Complaint ¶¶79-80.)  They do not allege compliance with the internal, mandatory,

9   administrative remedies imposed by the Plan. (Complaint ¶¶ 64-80 [by omission].)  Nor do they

10  attach any Plan documents to the Complaint despite the fact that these documents are available to

11  them. (*Id*.)

12          Plaintiffs do however refer to the Plan governing instrument (*e.g.* Complaint ¶ 76),

13  effectively incorporating the document's language into the Complaint and allowing this Court to

14  consider that information for the purposes of a 12(b)(6) motion to dismiss.  The January 1, 2007

15  Reed Elsevier U.S. Salary Investment Plan defines "Compensation" as meaning "total

16  remuneration . . . **paid** under the U.S. payroll system to an Employee  . . . during a Plan Year . . .

17  ." (Declaration of Ashleigh Owens ¶8, Ex. A at p. 4 (emphasis added).)[2]  In this regard,

18  eligibility for contributions is determined by reference to wages *paid*, not to wages *owed* or

19  *earned*, as Plaintiffs seem to theorize.  The Plan also contains a detailed process through which a

20  participant can file a claim for benefits internally, and may seek an internal review of any

21  adverse benefits determination. (Declaration of Ashleigh Owens ¶ 9, Ex. A at p. 53.)  Plaintiffs

22  do not allege that they pursued an internal claim or review.

23  **III.     ADDITIONAL FACTUAL BACKGROUND**

24          Lexis submits the following additional evidence relevant to the jurisdictional question of

25  whether the case is constitutionally moot.

26

27

28

---

[2] The January 1, 2007 plan was in effect during most of the relevant time period.  A January 1, 2011 plan also is in existence and contains parallel provisions. *See* Declaration of Ashleigh Owens ¶ 9, Ex.B.

4

## A.     The Role of Additional Factual Evidence

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000) (citation omitted).  In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n. 2 (9th Cir.2003)

A Rule 12(b)(1) motion can be made as a speaking motion—or factual attack—when the defendant submits evidence challenging the jurisdiction along with its motion to dismiss, *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); c*f. Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 (1997) (constitutional mootness "goes to the Article III jurisdiction" of the court).  A proper speaking motion allows the court to consider evidence outside the complaint without converting the motion into a summary judgment motion. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035 1039 (9th Cir. 2004).

Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Savage*, 343 F.3d at 1039-40, n.2.  In a speaking motion, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Safe Air*, 373 F.3d at 1039.

## B.     Lexis Made Unconditional Payment of Full Relief Prior to Plaintiffs' Filing of the Case

Lexis reclassified Plaintiffs from salaried, exempt employees to hourly, non-exempt employees on May 10, 2010. (Declaration of Ashleigh Owens ¶ 2.)  Lexis believes Plaintiffs' duties satisfied the requirements of one or more overtime exemptions under federal and state law, and that it could have continued to lawfully classify Plaintiffs as exempt.  Lexis decided, however, to reclassify Plaintiffs because of the risks associated with the surge of wage and hour lawsuits in California.  It chose to take a conservative approach to Plaintiffs' prospective classification.

In connection with the reclassification, Lexis chose to pay Plaintiffs certain additional wages. (Declaration of Ashleigh Owens ¶¶ 2-3.)  Plaintiffs were asked for estimates of overtime

5

1   hours they had worked during the two-year period preceding the date on which Lexis reclassified

2   them. (Declaration of Ashleigh Owens ¶ 3.)   This was intended to account for the amounts that

3   could have been owed under the FLSA had the plaintiffs been hourly employees.  In late

4   September of 2010, Lexis was contacted by Plaintiffs' counsel, Jason Lohr. (Declaration of

5   Ashleigh Owens ¶ 4.)  After discussions with Lohr, Lexis decided to calculate and pay additional

6   wages pursuant to a formula based on California law (as opposed to the FLSA law applied to the

7   initial payments).  Lexis requested that Lohr provide to it an estimate of the hours that Plaintiffs

8   worked during those additional years and throughout all four years. (Declaration of Ashleigh

9   Owens ¶ 4.)  Lohr stated that Dessin had worked 732 hours of overtime between May 10, 2006

10  and May 10, 2010 when she was reclassified.  For Chie, Lohr stated that she had worked 858

11  hours of overtime. (Declaration of Ashleigh Owens ¶ 4.)

12      Hoping to avoid the suit that Lohr threatened to file on Plaintiffs' behalf, Lexis issued an

13  additional check to Dessin in the amount of $43,249.02. (Declaration of Ashleigh Owens ¶ 5.)  It

14  paid Chie $31,329.93. (*Id.*)  These amounts were in addition to the prior amounts Dessin and

15  Chie had been paid at the time of reclassification ($4,622.61 to Dessin and $3,470.50 to Chie).

16  (*Id.*)  These payments were calculated to ensure Plaintiffs received the full amount that they

17  could have recovered under California law for back overtime based on their claimed overtime

18  hours worked and salary.

### C.   The Amounts Paid by Lexis <u>Exceed</u> the Potential Overtime Liability to Each Plaintiff Under California Law.

21      The total payments **exceed** the maximum amount that Plaintiffs could recover on their

22  minimum wage and overtime claims asserted with this case.  Chie's maximum salary during the

23  relevant period was $49,495.00 per year.  Dessin's maximum salary during the relevant period

24  was $57,776.93 per year.  Dividing by 52 workweeks in a year and then by 40 hours in a

25  workweek, this yields $27.77 as the hourly rate for Dessin, and $23.80 as the hourly rate for

26  Chie.  Multiplying by 1.5, this yields overtime rates of $41.67 and $35.69 respectively.  Taking

27  this figure and multiplying it by the number of claimed overtime hours for each Plaintiff yields

28  $30,625.03 for Chie and $30,499.55 for Dessin.  (**Chie:** 858 overtime hours * $35.69 per hour =

6

1   $30,625.03; **Dessin:** 732 overtime hours * $41.67 per hour = $30,499.55.)  Yet Plaintiffs were

2   paid a total of $46,719.52 (Chie) and $35,952.54 (Dessin).[3]  Plaintiffs already have been

3   overpaid for their overtime claims, but refuse to deposit the checks that have been tendered to

4   them and still seek more.

5   **IV.    PLAINTIFFS' WAGE & HOUR CLAIMS ARE**
       **CONSTITUTIONALLY MOOT**

6

7       **A.    The Doctrine of Constitutional Mootness**

8       It is a core tenet of federal jurisdiction that a court holds subject matter jurisdiction only

9   as granted by the Constitution.  Article III limits the jurisdiction of federal courts to cases

10  involving an active "case or controversy."  *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505,

11  1510 (9th Cir. 1994).  The converse of this requirement is that, where no live case or controversy

12  exists, the court lacks jurisdiction over a particular claim.  *See Cntr. for Biological Diversity v.*

13  *Lohn*, 511 F.3d 960, 963-65 (9th Cir. 2007).  Among claims presenting no case or controversy

14  are those where the question plaintiff seeks to have adjudicated has become moot—for instance,

15  in a case for damages, when a plaintiff has received the full monetary relief to which they are

16  entitled through other means prior to or during the pendency of a lawsuit.  The question of

17  Constitutional mootness is frequently assessed at the outset of a case, but "Article III requires

18  that a live controversy persist through all stages of the litigation." *Gator.com Corp. v. L.L. Bean,*

19  *Inc.*, 398 F.3d 1125, 1128-29 (9th Cir. 2005).  *See also, e.g., Ambalu v. Rosenblatt*, 194 F.R.D.

20  451, 452-53 (E.D.N.Y. 2000) (applying the doctrine of constitutional mootness to claim brought

21  under the FLSA).

22      **B.    Lexis Tendered Full Back Overtime Payments Prior to**
               **Plaintiffs' Filing of this Lawsuit.**

23

24      Using *Plaintiffs' own representation of their overtime hours,* the maximum amount that

25  they could recover under California law for overtime is *less* than they have already been paid.

26  (*See* Sections III(b) and (c) *supra* at pp. 5:21-7:8).  Yet Plaintiffs now sue for the very recovery

27  that Lexis has already provided to them voluntarily, and in effect, file a lawsuit seeking a check

28  ─────────────────
    [3] The overpayment is even greater considering that this case was filed on April 12, 2011, but
    Lexis made back payment amounts using four years from the May 10, 2010 reclassification date.

that is already sitting on their lawyers' desk.  Because they can recover nothing more through this case than the payments that have already been issued to them, their claims under the FLSA and California Labor Code for minimum wage and overtime are moot.  In other words, Plaintiffs "can't persist in suing after [they've] won." *Greisz v. Household Bank (Il.), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999).

Numerous courts have held that the uncondititonal payment of the full amount in controversy moots any active claim and eliminates a federal court's jurisdiction over a dispute due to the absence of a case or controversy.  *See, e.g., MacKenzie v. Kindred Hospitals East, L.L.C.*, 276 F. Supp. 2d 1211, 1219 (M.D. Fl. 2003) (holding offer of judgment in excess of amount plaintiff could recover if it prevailed in FLSA suit mooted case); *Ambalu v. Rosenblatt*, 194 F.R.D. 451, 452-53 (E.D.N.Y. 2000) (holding plaintiff had no more stake in case after defendant tendered offer of judgment in full amount plaintiff would be entitled to recover); *Rollins v. Systems Integrations, Inc*., C.A. No. 4:05-CV-408-Y, Slip Op., 2006 WL 3486781, at *3-4 (N.D. Tex. Dec. 4, 2006) (plaintiff's case dismissed for lack of subject-matter jurisdiction because defendant "made an offer of judgment designed to afford [plaintiff] all relief he would be entitled to under section 216(b) of the FLSA if he succeeded on the merits"); *Briggs v. Arthur T. Mott Real Estate, LLC*, 2006 U.S. Dist. LEXIS 82891, at *12 (E.D.N.Y. Nov. 14, 2006) ("the Court concludes that Defendant's Rule 68 offer of judgment gives Plaintiff all that he could hope to recover on his FLSA claim and thereby renders it moot. Accordingly, the Court lacks subject matter jurisdiction over the FLSA claim.").  There is no reason to conclude that the result should be any different where an offer of full relief has been made prior to the actual initiation of litigation.  *E.g., Building & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1491 (10th Cir. 1993) ("Constitutional mootness doctrine is grounded in the Article III requirement that federal courts only decide actual, ongoing cases or controversies.").  Whether made before or after filing, the provision of full relief moots any case or controversy.

Based on Plaintiffs' counsel's representation of the specific number of hours that Plaintiffs worked, Lexis has sent Plaintiffs a back overtime payment that *exceeds* what they can recover under California law or the FLSA, even if successful in their case.  Because the amounts

8

1    Plaintiffs seek under the California Labor Code and FLSA overtime causes of action (causes of

2    action 1 and 2) have been paid in full, no case or controversy continues, and those claims must

3    be dismissed for lack of jurisdiction.

4    **V.      PLAINTIFFS' REPRESENTATIVE ACTION AND FRAUD
             CAUSES OF ACTION FAIL TO SATISFY GENERAL PLEADING**

5    **         STANDARDS AND THEREFORE STATE NO CLAIM.**

6            Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and

7    plain statement of the claim showing that the pleader is entitled to relief." This statement does

8    not require detailed factual allegations so long as it "give[s] the defendant fair notice of what the

9    . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  A

10   court will, however, dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for

11   failing to state a claim upon which relief can be granted if, after taking all facts alleged in the

12   complaint as true, those facts fail "to raise a right to relief above the speculative level." *Bell Atl.*

13   *Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007).

14           A complaint need not include exhaustive allegations of every fact supporting the claims,

15   but a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires "more

16   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

17   not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted).  A

18   plaintiff must present a lawsuit of "facial plausibility," containing "factual content that allows the

19   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

20   *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

21   544, 556 (2007)).  Conclusory allegations, or the mere recitation of the elements of a cause of

22   action, will not suffice.  *Id.*

23           **A.      Plaintiffs' Representative Action Allegations Fail to Satisfy
                    Minimal Pleading Standards.**

24

25           Plaintiffs have failed to assert the minimum grounds necessary to withstand dismissal of

26   their California Private Attorney General Act of 2004 ("PAGA") claims under *Twombly* and

27   *Iqbal*.  PAGA allows one or more plaintiffs to proceed in a "representative action."  Through a

28   representative action, a plaintiff can seek, for alleged Labor Code violations, civil penalties that

previously were recoverable only by the State in enforcement proceedings.  An "aggrieved employee"—meaning one who suffered injury as a result of an alleged violation of the Labor Code—can bring suit to recover penalties pertaining to their own employment, and also for penalties available to other workers who are also "aggrieved employees" for purposes of the case. *See, e.g.*, *Arias v. Superior Court*, 45 Cal.4th 969 (2009).

Plaintiffs have merely pleaded, in a conclusory fashion, that Lexis employed other allegedly "similarly situated" workers who they may represent under PAGA.  They have not alleged any specific facts that could give rise to facial plausibility of the assertion that the other unidentified workers suffered any violation of the Labor Code or are otherwise eligible for penalties under PAGA.  They do not even identify the other supposed workers.  They do not specify where in California the "similarly situated" workers were based, and do not state or allege what job title or titles the other workers held.  They do not allege what violation the other workers suffered, or provide any other factual basis to support a claim of any Labor Code violation as to the other workers.  Without such allegations, their claims are precisely the "formulaic recitation" that *Twombly* and *Iqbal* prohibit.

In that regard, the case is very similar to *Jian Zhong v. August August Corp.*, 498 F. Supp. 2d 625 (S.D.N.Y. 2007), in which the district court dismissed wage and hour representative allegations (there, under the FLSA collective action procedures), because the Plaintiff had attempted to invoke representative procedures simply by "invoking the phrase 'other[s] similarly situated.'" *Id.* at 631.  But just as Plaintiffs do here, the *Zhong* Plaintiff "neither generally nor specifically named or referenced any other plaintiffs." *Id.*  Under those circumstances, the Court ruled that there was no factual basis from which it could determine whether similarly situated plaintiffs would exist, and dismissed the collective action claims. *Id.*

The *Twombly* standard has been equally applied by California district courts.  In *Harding v. Time Warner, Inc.*, 2009 U.S. Dist. Lexis 72851, the court found plaintiff's allegations that the employer willfully failed to "pay and properly calculate overtime," "keep accurate records of all hours worked by its employees," and "provide all wages in a compliant manner" were conclusory allegations as defined by *Twombly* and were entitled to "no weight." *Id.* at 8-9.

10

Compare this ruling, for instance, with Paragraph 17 of Plaintiffs' Complaint, stating in conclusory fashion: "Defendant has willfully refused to pay the required straight-time and overtime compensation for hours worked, and has failed to keep time records as required by law for numerous aggrieved employees in the State of California." (Complaint ¶ 17.)  These allegations mirror almost precisely those in *Harding*, and must be dismissed for the same reason. *See also Guttierez v. Aaron's, Inc*., 2010 WL 4968142 (E.D.Cal. 2010) ("Plaintiff fails, however, to allege where and when [violations occurred] . . . with only a legal conclusion and limited factual allegations supporting the claim, Plaintiff has merely alleged a suspicion of a right to relief.  He has not nudged his claim across the line from conceivable to plausible.").

Defendants concede that Plaintiffs provide, <u>outside of the representative action section of their complaint</u>, additional facts relative to <u>their own employment</u> that are sufficient for pleading purposes.  But this must be contrasted with the complete absence of facts to support any allegations as to other hypothesized "aggrieved employees."  Plaintiffs cannot meet their burden to create a plausible claim for *other* employees solely through pleading facts that relate to their *own* employment.  Plaintiffs are not even consistent in their allegation as to the number of other aggrieved employees, at one point stating there were 30 in San Francisco and 200 throughout the country (Complaint ¶ 13), but elsewhere alleging that there are more than 300 in the state of California (Complaint ¶ 94).  Plaintiffs go on to hypothesize that the "aggrieved employees" can easily be identified through payroll records (Complaint ¶ 94), but do not submit even a working or preliminary definition of which employees are alleged to be aggrieved, or explain how payroll records would allow such identification at all.  For this reason, the representative action allegations under PAGA must be dismissed, and Plaintiffs should be permitted to proceed with PAGA claims only as to their own employment.

### B.     Plaintiffs Fail to State a Claim for Fraud (Intentional Misrepresentation).

To establish intentional misrepresentation under California law, a plaintiff must prove: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or '*scienter*'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

11

1  resulting damage." *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974

2  (internal quotation marks omitted); *see also Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092,

3  1108. Sometimes the tort is stated with four elements instead of five: "(1) a knowingly false

4  representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable

5  reliance by the plaintiff; and (4) resulting damages." *Service by Medallion, Inc. v. Clorox Co.*

6  (1996) 44 Cal.App.4th 1807, 1816. This presentation of the elements in effect incorporates the

7  scienter requirement into the first prong. Both are ultimately the same, and both require a

8  Plaintiff to establish an intent to deceive, justifiable reliance, and damages from that reliance. It

9  is within this framework that Plaintiffs' fraud allegation must be analyzed. To withstand a

10 motion to dismiss, Plaintiffs must allege facts sufficient to satisfy each element of the claim.

11                    **1.    Alleged misrepresentations of *law*, as opposed to *fact*,**
12                            **cannot give rise to actionable fraud.**

13     This is a peculiar fraud claim, because Plaintiffs do not contend that Lexis hid or

14 misrepresented to them any *specific facts*, but rather, allege that Lexis's human resources

15 representative—a non-lawyer—made *misstatements of law*. Courts have consistently held that a

16 misstatement of law cannot give rise to a claim for fraud, absent special circumstances (such as

17 where the defendant was an attorney or where a confidential or fiduciary relationship existed

18 between the parties).[4] *See, e.g.*, *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620-21 (9th Cir.

19 2004) (fraud conviction ordinary cannot be premised on misstatement of law); *see also Haviland*

20 *v. S. Cal. Edison Co.,* 172 Cal. 601 (1916).

21     Providing explanation for this rule, the Restatement (Second) of Torts explains that a

22 misrepresentation of law is generally only one of opinion, and therefore the recipient can only

23 justifiably rely on it to the extent that he can justifiably rely on other opinions. *Restatement*

24 *(Second) of Torts* § 545 (1977). This standard was also addressed in *Slocomb v. City of Los*

25 *Angeles*, 197 Cal. App. 2d 794 (1961). The California Court of Appeal held in that case that no

26 actionable fraud had occurred through an employer's alleged misrepresentations of employees'

27
28
___

[4] The reasoning for this rule is that "everyone is presumed to know the law, both civil and criminal, and is bound to take notice of it. Hence one has no right to rely on such representations or opinions and will not be permitted to say that he was misled by them." *United States v. Panthaky*, 232 Fed. Appx. 645, 648 (9th Cir. Cal. 2007).

1    overtime status, because, in part, the misrepresentation constituted a misstatement of law and

2    therefore was not actionable. The court further held that dismissal was appropriate because the

3    plaintiffs failed to allege that "any confidential relationship existed between the employers and

4    the employees" such as could give rise to a claim based on misstatement of law. *Id.* at 530-32.

5    Here, as in *Slocomb*, Plaintiffs do not plead any facts of additional ties between

6    themselves and Lexis that would give rise to or create a presumption of a confidential

7    relationship. Just as in *Slocomb*, their fraud claim—predicated on a theory that they fell victim

8    to misrepresentations of law, not fact—must be dismissed for failure to state a claim.

9              **2.    Plaintiffs have failed to allege facts sufficient to prove**
                       **that any statement was made with knowing falsity.**
10

11   Plaintiffs have alleged no facts that would give rise to an inference that any statements

12   were made with knowing falsity. Without these allegations, an essential element of Plaintiffs'

13   intentional misrepresentation claim is missing. It must therefore be dismissed for Plaintiffs'

14   failure to state a claim. *Cf.*, *e.g.*, *Iqbal*, 129 S.Ct. at 1954; *Oestreicher v. Alienware Corp.*, 544

15   F.Supp.2d 964, 968 (N.D. Cal. 2008) (citing *Cooper v. Pickett*, 137 F.3d 616, 628 (9th

16   Cir.1997)); *Swartz*, 476 F.3d at 765; *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal.

17   2002). Plaintiffs assert in conclusory fashion that the statements were made with knowing

18   falsity, but this is insufficient. *See Goodman v. Kennedy*, 18 Cal.3d 335, 347 (1976) ("The mere

19   conclusionary allegations that the omissions were intentional and for the purpose of defrauding

20   and deceiving plaintiffs [] are insufficient."); *Hills Trans. Co. v. Southwest Forest Indus., Inc.*,

21   (1968) 266 Cal.App.2d 702, 706-08 (allegations of *scienter* "should be clear, specific, and

22   unequivocal" and sustaining [dismissal] without leave to amend where "[n]o specific facts were

23   pleaded to show[] from what data the falsity of [defendants'] intentions could be inferred").

24             **3.    Plaintiffs have failed to allege facts to support the**
                       **existence of any duty that Lexis allegedly violated.**
25

26   Plaintiffs predicate their fraud claim, in part, on the allegation that Lexis failed to disclose

27   material facts regarding the reclassification, or that it omitted material facts when advising

28   Plaintiffs that they were being reclassified. But absent a specific legal duty to disclose

                                                      13

1    information, a party cannot be held liable for fraud on the basis of non-disclosure or concealment

2    of information. *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336-337.

3            There are only four circumstances under California law that can give rise to a duty to

4    disclose information: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

5    when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3)

6    when the defendant actively conceals a material fact from the plaintiff; and (4) when the

7    defendant makes partial representations but also [intentionally] suppresses some material facts.

8    *LiMandri, supra*, at 337.

9            Plaintiffs do not allege that there was any active concealment of fact, that Defendants had

10   exclusive knowledge of any facts, or that Defendants intentionally suppressed any material facts

11   surrounding the misclassification.  Indeed, it would be impossible for them to do so, as such

12   concealment simply did not occur.  Given these circumstances, Plaintiffs instead choose to hinge

13   their omission theory on the allegation that Defendants' human resources representatives owed

14   them a *fiduciary duty* to disclose the supposedly omitted information.  They state: "[Ashleigh]

15   Owens, within her capacity as a human resources representative for Reed Elsevier, maintains a

16   fiduciary and/or confidential relationship with Plaintiffs." (Complaint ¶ 112.)  Yet the law and

17   allegations simply do not support this theory, albeit a somewhat novel and creative one.  "The

18   determination of whether [a fiduciary] duty exists is primarily a question of law", (*Eddy v. Sharp*

19   (1988) 199 Cal.App.3d 858, 864), and no court has ever recognnized a fiduciary duty owed by a

20   human resources representative to a fellow employee of his or her employer.

21           The invention of such a fiduciary duty now would have very far reaching and problematic

22   implications for industry.  Human resources workers are engaged by the employer to represent

23   *the employer's* interests in regard to personnel matters.  If a court were to find a fiduciary duty

24   from a human resources representative to a worker, representatives could be held liable for

25   failing to disclose any number of facts, from an impending layoff to all manner of information

26   that may be of interest to a worker but viewed as confidential by the employer.  Because no

27   fiduciary duty exists, and no other duty to disclose has been alleged, the fraud claim fails to state

28

14

a claim to the extent it is predicated on non-disclosure as opposed to affirmative misrepresentations.

Plaintiffs also imply that a confidential relationship existed between them and Lexis.  But courts both within and outside California have firmly rejected the contention of such a relationship arising solely due to the relationship between a worker and his/her employer.  "No presumption of a confidential relationship arises from the bare fact that parties to a contract are employer and employee . . . ." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123 (1966); *see also Bowman v. City of Indianapolis*, 133 F.3d 513, 519 (7th Cir. 1998) (explaining that a relationship between city and its employees does not constitute a "confidential relationship" without more).  Although both *Odorizzi* and *Bowman* hold open the possibility for a confidential relationship to exist in special circumstances, no such circumstances are set out, nor do Plaintiffs allege factual circumstances here (beyond the fact of employment) that could give rise to a confidential relationship.

This line of precedent also has been applied in circumstances directly paralleling this lawsuit—the situation where an employee alleges that a confidential relationship is present in relation to representations from an employer to an employee as to overtime pay.  In *Slocomb v. City of Los Angeles*, 197 Cal. App. 2d 794 (1961), the California Court of Appeal affirmed the dismissal of plaintiffs' claim that they were defrauded for nineteen years by their employer's misrepresentations of entitlement to overtime pay.  Part of the reason the dismissal was affirmed was that no "confidential relationship existed between the employers and the employees." *Id.* at 530-32.

### 4.  Plaintiffs have not pleaded facts to support a finding that any reliance on their part was reasonable.

To prevail on a fraud claim, a plaintiff must establish that any reliance on the representation was reasonable.  Plaintiff Chie is married to her attorney, Jason Lohr.  Yet Plaintiffs suggest that they were foreclosed from pursuing their right to seek allegedly unpaid wages because they relied on statements about the relevant laws made by Lexis's non-attorney

1    human resources representative, Ashleigh Owens, when she responded to questions that

2    Plaintiffs purportedly asked.

3           Further, each of the supposedly false statements alleged by Plaintiffs was preceded by an

4    expression of uncertainty from Ms. Owens.  For instance, when allegedly asked by Dessin if

5    "there is anything we should know [as California employees]", Ms. Owens stated: "<u>For now</u>,

6    no." (Complaint ¶ 116.) (*emphasis added*.)  Any reliance on such an equivocal statement is per

7    se unreasonable.  When Dessin further followed up on the question, Ms. Owens stated: "[t]hat is

8    our understanding . . . [the] [c]ompensation department is confirming this as we speak,

9    however." (Complaint ¶ 116.)  Later on, when asked about a two-year time frame for back wages

10   (a longer time frame was ultimately used), Ms. Owens stated: "<u>I think</u> it's the statutory

11   timeframe for back wages." (Complaint ¶ 117.)

12          Under these circumstances, it is unreasonable for Plaintiffs to contend that they relied on

13   statements that expressed nothing more than uncertainty, equivocation, and the need for further

14   research.  Indeed it is questionable whether one can *ever* reasonably rely on information

15   provided from a non-lawyer on legal issues.  Nor does it delve into the fact that, by asking the

16   questions she was asking, Dessin revealed that she already doubted the accuracy of the

17   information being provided. *Bowman v. City of Indianapolis*, 133 F.3d 513, 519 (7th Cir. 1998)

18   ("The recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he

19   knows that it is false or its falsity is obvious to him.").

20                      **5.      Plaintiffs have not alleged that they suffered any harm**
                               **or detriment due to their alleged reliance.**
21

22          The remaining essential element of the intentional misrepresentation claim is damages, or

23   harm resulting from the reliance.  Plaintiffs contend that they suffered harm from their reliance

24   because they delayed in seeking legal counsel and presumably thereby delayed in filing suit.

25          Courts that have examined this issue have consistently held that a delay in filing suit is

26   not sufficient to support a claim of detriment arising from reliance.  *See Atlantic Richfield Co. v.*

27   *Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (delay in filing suit does not

28   establish detrimental reliance); *KEMA, Inc. v. Koperwhats*, 658 F. Supp. 2d 1022, 1033 (N.D.

1  Cal. 2009) ("Nor has Koperwhats adequately alleged that he incurred any loss or damage as a

2  result of any reliance on the February 17, 2009 email. In particular, Koperwhats does not explain

3  how he was harmed by any delay in filing suit."); *Werman v. Malone*, 750 F. Supp. 21, 23 (D.

4  Me. 1990) (concluding that a plaintiff's bare-bones allegation that he "refrained from filing suit"

5  as a result of the defendant's conduct was "insufficient as a matter of law to establish the element

6  of detrimental reliance").  Plaintiffs chose to wait until April of 2011 to file suit, despite the fact

7  that Plaintiff Chie's husband represents them and they were actively working with counsel by

8  October of 2010.  This delay cannot be attributed to any supposed misstatement by Lexis.

9      Because Plaintiffs have not pleaded any legally-cognizable detriment arising from their

10  reliance, they have failed to state a claim for fraud.

11  **VI.    PLAINTIFFS FAIL TO STATE CLAIMS FOR RELIEF UNDER
            ERISA.**

12

13      Plaintiffs' ERISA causes of action fail because Lexis was not acting as a fiduciary

14  relative to the 401(k) plan when it made the business decision to classify Plaintiffs as exempt

15  employees.  Therefore Plaintiffs cannot state a claim for breach of fiduciary duty.  Moreover,

16  Plaintiffs' claims amount to claims for benefits under the Plan, and they were required to exhaust

17  the Plan's internal remedies prior to suing in court, and have failed to do so. Last, Plaintiffs have

18  not pleaded that they suffered any harm in relation to the alleged recordkeeping violation, and

19  therefore cannot state a claim.

20      Plaintiffs assert two causes of action under the Employee Retirement Income Security

21  Act of 1974.  Both causes of action relate to the 401(k) retirement plan provided as a benefit to

22  Lexis employees (the "Plan").  Plaintiffs contend first that Lexis undertook and violated a

23  fiduciary duty to Plaintiffs *vis-à-vis* the Plan by failing to ensure that the Plan accurately tracked

24  the hours worked by Plaintiffs.  The hours worked and compensation earned can impact a

25  worker's benefits under the Plan, although Plaintiffs conspicuously fail to allege that their own

26  plan benefits were affected in any way by supposed failure to track their hours worked or

27  compensation earned.

28

**A.    Plaintiffs have not alleged that Defendants engaged in discretionary fiduciary acts with regard to the Plan.**

Plaintiffs Sixth and Seventh Causes of Action, simply put, allege that Defendants breached a fiduciary duty owed to them by failing to account for and keep records of overtime pay in administering the Plan.  In doing so, Plaintiffs incorrectly assume that ERISA governs decisions about classifying an employee as exempt or non-exempt.  *Hall v. Hill Refrigeration, Inc.,* 36 F. Supp. 2d 1185, 1188 (C.D. Cal. 1999).  ERISA fiduciary duties can apply *only* to a company's actions as a fiduciary *with respect to* an employee benefit plan.  Its actions in its capacity as an employer are *not* within the purview of ERISA.[5] The text of ERISA clarifies this critical distinction, providing that "a fiduciary shall discharge his duties *with respect to a plan* solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104 (*emphasis added*).

Here, the decision to classify Plaintiffs as exempt employees was a business decision that was made for payroll and employee compensation purposes.  It was not a benefits decision, nor was it made in Lexis's capacity as a purported fiduciary with respect to the Plan.  Courts have routinely held that an ERISA fiduciary "is not subject to those fiduciary duties in all of [it's] life activities." *Hall, supra*, at 1188 (C.D. Cal. 1999).  In fact, "ERISA [] envisions that employers will act in a dual capacity as both fiduciary to the plan and as employer. ERISA does not prohibit an employer from acting in accordance with its interests as employer *when not administering the plan or investing its assets.*" *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir. 1986), *cert. denied,* 481 U.S. 1016 (1987) (*emphasis added*); *see also Pegram v. Herdrich,* 530 U.S. 211, 225-26 (2000) (acknowledging that ERISA permits employers to act in a dual capacity as both a fiduciary to the plan and as a plan sponsor).

Plaintiffs do not allege that the decision to classify Plaintiffs as exempt employees was made in Lexis's capacity as a plan sponsor, as opposed to its capacity as Plaintiffs' employer.  Nor would the facts support such a claim.  Numerous courts have held that compensation decisions are business judgments that fall outside of ERISA's fiduciary scope.  In *Eckelkamp v. Beste*, for example, the District Court for the Eastern District of Missouri considered whether a

---

[5] Indeed, if the opposite were true, every imaginable business decision that arguably resulted in a loss of profits to the company could become an ERISA violation.  This is clearly not the law.

18

1   decision about compensation levels implicated ERISA. 201 F. Supp. 2d 1012, 1023 (E.D. Mo.

2   2002), *aff'd,* 313 F.3d 863 (8th Cir. 2002). The court concluded that it did not, because "[s]etting

3   compensation levels is a business decision or judgment made in connection with the on-going

4   operation of a business." *Id.*

5           This Court, as well, has held that payroll decisions do not qualify as fiduciary decisions

6   with regard to an ERISA benefits plan. *See Veliz v. Cintas Corp.*, 2003 WL 23857822 (N.D. Cal.

7   2003) (Armstrong, J.); *but see Rosenburg v. IBM*, 2006 U.S. Dist. LEXIS 41775 (N.D. Cal. June

8   12, 2006) (Hamilton, J.) (referring to the question as a "close call" and saying the court "was not

9   persuaded" by the briefing to grant the motion in that particular circumstance).

10          ERISA does not require "day-to-day corporate business transactions, which may have a

11  collateral effect on prospective, contingent employee benefits, be performed solely in the interest

12  of plan participants." *Hickman v. Tosco Corp.*, 840 F.2d 564, 566 (8th Cir. 1988) (citing

13  numerous other cases); *see also Ballaris v. Wacker Siltronic Corp.*, 2002 U.S. Dist. LEXIS 2746

14  (D. Or. Feb. 7, 2002).

15          **B.      Plaintiffs have not exhausted administrative remedies.**

16          A core provision of ERISA law requires plan participants to submit claims for benefits to

17  their plan administrator, thereby exhausting administrative remedies, before filing a lawsuit in

18  court for benefits.  *See Diaz v. United Agric. Employee Welfare Plan and Trust,* 50 F.3d 1478, 1483

19  (9th Cir. 1995); *Amato v. Bernard,* 618 F.2d 559, 566-68 (9th Cir. 1980).  Plaintiffs' Seventh Cause

20  of Action directly seeks an equitable award be made to them for benefits under the Plan.[6]

21  Plaintiffs, however, have not exhausted the internal administrative remedies made available by

22  the Plan for resolving such claims prior to filing suit, a core requirement of ERISA. *See Diaz*,

23  *supra*. The Complaint does not allege that these remedies have been resorted to much less

24  exhausted.  Plaintiffs' Seventh Cause of Action should be dismissed, and may be properly

25  brought only after exhausting remedies available under the Plan, and only as to issues which are

26  not rendered moot by the Plan's internal remedies.

27  _____

28  [6] This issue is equally relevant to the Sixth Cause of Action, which alleges a fiduciary breach,
    but ultimately seeks the same result as the Seventh cause of action—an award of benefits under
    the Plan—and therefore functions as a claim for benefits.

19

1        **C.      Plaintiffs plead no injury from the ERISA allegations.**

2        In a glaring omission, Plaintiffs fail to plead that they participated in the 401(k) plan

3   provided by Lexis or that they suffered any harm as a result of the alleged failure to track all

4   hours worked (i.e., the alleged recordkeeping violation).  Plaintiffs do not support their ERISA

5   claim with any explanation of how they were harmed or what their theory of liability on their

6   ERISA claim might be.  Unless Plaintiffs suffered some harm from the supposed violation, it is

7   difficult to imagine how they would be entitled to any equitable, monetary, or other relief.

8   Rather, without allegations of harm, the claim is purely academic, seeks only an advisory

9   opinion, and is not proper for consideration by this Court.  To the extent that their benefits under

10  the Plan were not reduced or affected in any way by the allegations they now make, Plaintiffs

11  were not harmed and cannot properly state a claim for additional benefits.

12  **VII.    CONCLUSION**

13       For the reasons stated herein, Defendants respectfully request that this Court dismiss

14  Plaintiffs' First, Second, Sixth, Seventh, Ninth, Tenth, and Eleventh causes of action.

15

16  DATED: June 14, 2011                    SEYFARTH SHAW LLP

17                                          By____/s/  Cody D. Knight_____
                                               Catherine M. Dacre
18                                             Cody D. Knight
                                            Attorneys for Defendants
19                                          LEXISNEXIS, INC., REED ELSEVIER, INC.
                                            AND MATTHEW BENDER & COMPANY INC.
20

21

22

23  3478029v.1 / 37179-000072

24

25

26

27

28